# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JULIE CONTRERAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15 C 6278 |
| ) | |
| LIFESOURCE/ITxM, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Julie Contreras has sued her former employer, LifeSource/ITxM, alleging that it subjected her to a hostile work environment and discriminated against her based on her national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. LifeSource has moved for summary judgment. For the reasons stated below, the Court grants LifeSource's motion.

## Background

LifeSource is a not-for-profit blood transfusion and bone marrow recruitment provider with an office in Rosemont, Illinois. The Institute for Transfusion Medicine (ITxM) is LifeSource's parent company. The National Marrow Donor Program (NMDP) in Minneapolis, Minnesota contracts with LifeSource to identify, recruit, and provide bone marrow donors for NMDP's Bone Marrow Registry. The NMDP sets LifeSource's periodic bone marrow recruitment goals. There are separate goals for non-Caucasian or minority bone marrow donors and for Caucasian bone marrow donors. The distinction between minority and Caucasian donors is science-driven and standard in

the industry because there is a higher probability of a match between a donor and a recipient of the same race.  If LifeSource exceeds NMDP's Caucasian goal, it is required to pay NMDP processing fees for the extra Caucasian donors, but it may exceed the NMDP minority donor goals without any penalty.  LifeSource pays its bone marrow recruiters a five-dollar bonus for every minority donor when the monthly NMDP goal is attained but just a one dollar bonus for every Caucasian donor..

In 2006, Contreras, who is of Mexican national origin and speaks fluent Spanish, was hired by LifeSource as a bone marrow recruiter.  Contreras was responsible for educating, recruiting and retaining potential bone marrow donors through recruitment drives, as well as fundraising.  LifeSource management told Contreras that she was hired to help bring the company "closer to the Hispanic and African-American community."  Def. Stat. of Material Facts ¶18.  Contreras's initial supervisor viewed her Spanish-speaking skills as an asset to the company.  In 2014, LifeSource had Contreras certified in Spanish language skills.  Deborah Vehec, ITxM's manager of special programs, began supervising LifeSource's bone marrow recruitment program, and Contreras, in January 2015.

Despite Contreras's skill set, her work performance allegedly suffered after a few years on the job.  In her performance evaluations from 2011 to 2014, LifeSource reported that Contreras consistently missed her fundraising goals, had problems effectively communicating with her colleagues, and failed to meet her recruitment goals for both minority and non-minority donors.  In July 2015, LifeSource placed Contreras on a performance improvement plan (PIP), which was scheduled to be in place until September 30, 2014.  Two days before the PIP's scheduled conclusion, Contreras was

injured on the job and took a leave of absence until January 2015.

Upon her return, Contreras was placed on light duty work due to the lifting and bending restrictions put in place by her doctor. Contreras was also given an action plan for her return. In the plan, LifeSource stated its intention to provide Contreras with fundraiser training. The plan also set out that employees who worked near Contreras's desk would report her tardiness. Contreras received a verbal warning for her tardiness and a written warning for failing to perform multiple tasks. In March 2015, Vehec placed Contreras on a continuation of her July 2014 PIP, for the period from March 3, 2015 to April 3, 2015. In late March 2015, LifeSource implemented a policy which required Contreras and others, including Vehec, to submit draft press releases to a communications specialist for final approval before release. Later that month, Contreras resigned.

On March 26, 2015, Contreras filed a charge of discrimination against LifeSource with the Equal Employment Opportunity Commission. In the charge, Contreras alleged that LifeSource had discriminated against her based on her race and national origin. Contreras filed this suit in July 2015 but limited her allegations to discrimination based on her national origin.

Contreras alleges that LifeSource subjected her to "systematic discrimination" following her return to work after her injury. Pl's Resp. Br. 4. She asserts that Vehec disciplined her by placing her on a PIP in early 2015 for not meeting her minority recruitment goals. Contreras asserts that, at the same time she was being disciplined, Vehec was in the process of lowering minority recruitment goals for a similarly situated manager outside of Contreras's protected class. Contreras also cites an incident where

Vehec demanded that Contreras change her bilingual voicemail message to an English-only message. Contreras also cites an incident where Vehec instructed her to clean a work station of another employee. Contreras contends that Vehec requested this of her because Contreras is Hispanic and Vehec allegedly has a Hispanic housekeeper.

Contreras also alleges that that LifeSource's systematic discrimination resulted in a hostile work environment. Contreras asserts that LifeSource tried to force her out by discontinuing its affiliations with Hispanic groups. Contreras also states that LifeSource had employees "watching" her, such as monitoring her tardiness and reading over her press releases. *Id*. at 5. Finally, Contreras contends that LifeSource made it clear that it wanted her to quit because LifeSource offered her one dollar to resign during settlement negotiations involving her workers' compensation claim.

## Discussion

On a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and [that] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment must be granted "[i]f no reasonable jury could find for the party opposing the motion." *Hedberg v. Ind. Bell. Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

**A.     Statute of limitations**

Under Title VII, an employee has ninety days to file suit against an employer after

receiving a notice of right to sue from the EEOC.  Contreras states in an affidavit submitted with her response to LifeSource's motion that she received a notice of right to sue on April 7, 2015.  LifeSource asks the Court to disregard Contreras's affidavit, arguing that it conflicts with her deposition testimony on that point and with her complaint.  It contends that Contreras is barred from bringing this action because her suit was untimely.

The Seventh Circuit has held that a court may disregard an affidavit that conflicts with previous deposition testimony.  The Seventh Circuit explained that a "sham" affidavit involves "contradictions so clear that the only reasonable inference was that the affidavit was a sham designed to thwart the purposes of summary judgment." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015).  In cases where the Seventh Circuit has "rejected a change in testimony, the witness has consistently adhered to one version of events prior to the change." *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007); *see Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004) (explaining that a contradiction exists only when the statements are inherently inconsistent, and not when the later statement merely clarifies an earlier statement which is ambiguous or confusing).

Contreras's affidavit does not directly conflict with her deposition testimony.  Contreras did not definitively state during her deposition that she received the notice of right to sue on April 2, 2015.  When first asked when she received the letter, Contreras stated, "I do not recollect."  Def. Stat. of Material Facts, Ex. A at 271.  Then she stated, looking at the letter, "[i]t looks like they signed it on 3-30-15, and this is from Chicago coming to Waukegan.  It takes like three days maybe."  *Id.* at 272.  In context, it is clear

that the latter testimony amounted to a guess; Contreras never said that she actually received the notice on April 2.  Thus her affidavit stating that she received the notice on or after April 7, 2015 does not directly conflict with her deposition testimony.  This is not a situation in which a party adhered to one version of events during her deposition and then later gave a different version in an affidavit.

Even if one considers Contreras's affidavit to conflict with her deposition testimony, "a court must examine the particular circumstances of a change in testimony to see whether it is plainly incredible or merely creates a credibility issue for the jury." *Patton*, 480 F.3d at 488.  If there was "a confusing deposition question, circumstances indicating a lapse of memory, relevant new information discovered after the original testimony, or ambiguous or incomplete earlier testimony," *id.* (internal citations omitted), the conflict presents a credibility issue for a jury.  Here, even if there is arguably a conflict, Contreras's earlier testimony was incomplete and made it apparent that she had a lapse of memory.  As such, her statement in the affidavit that "upon review and recollection," she remembers that she received the letter on or after April 7, 2015 and not before is sufficient to defeat LifeSource's contention that it is entitled to summary judgment on the basis of untimeliness.

**B.      Hostile work environment**

Contreras contends that she was subjected to a hostile work environment based on her national origin.  To succeed on a hostile work environment claim, a plaintiff must provide evidence from which a jury reasonably could conclude that:  "(1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on her [national origin]; (3) the conduct was either severe or

pervasive; and (4) there is a basis for employer liability." *Porter v. City of Chicago*, 700 F.3d 944, 955 (7th Cir. 2012) (internal quotation marks omitted). In assessing these factors, a court must consider "all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offense utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted).

No reasonable jury could find that a good deal of the conduct of which Contreras complains had anything to do with her national origin. Contreras states that LifeSource had employees "watching" her, such as monitoring her tardiness. Pl's Resp. Br. 5. Contreras offers no evidence that these actions were based on her national origin. Moreover, Contreras provides no evidence to counter LifeSource's explanation that LifeSource was concerned about Contreras's tardiness because she had a tendency of being late. Contreras also contends that she was the target of discrimination because LifeSource required all of her press releases to be reviewed by a supervisor. Contreras, however, provides no evidence to call into doubt LifeSource's explanation that LifeSource's company policy states that all employees must have their press releases reviewed prior to publication. Finally, Contreras asserts that LifeSource made its discriminatory intentions known when it asked her to resign for one dollar during her workers' compensation settlement. Again, Contreras provides no evidence from which a reasonable jury could find that LifeSource's actions were the result of animus towards her national origin. Moreover, LifeSource provided evidence that it had made a similar request of a Caucasian employee during that employee's workers' compensation

7

settlement.

Of the remaining statements or actions that Contreras cites that arguably are national origin-based, no reasonable jury could find that the conduct was either severe or pervasive enough to sustain a hostile work environment claim. Contreras states that her supervisor, Vehec, demanded that she change her bilingual voicemail message to an English-only message. Though one might reasonably find that this demand was culturally insensitive—not to mention counterproductive, given Contreras's responsibility to market and recruit in the Hispanic community—no reasonable jury could find that this action was so severe as to impair Contreras's ability to work. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011) ("We will not find a hostile work environment for mere offensive conduct that is isolated, does not interfere with the plaintiff's work performance, and is not physically threatening or humiliating."). In addition, this requirement never actually took effect: Vehec withdrew her request as soon as Contreras explained that her voicemail reflected the diverse community that LifeSource served.

Similarly, Contreras cites that Vehec instructed her to clean a work station of another employee prior to the employee's first day. Contreras believes that Vehec made this request because she had a Hispanic maid and made a racist assumption that as a Hispanic woman, Contreras ought to be cleaning work stations. Contreras has offered no evidence to support this allegation. To the contrary, Contreras has admitted that she assumed what Vehec was thinking, without any evidence to support her assumption. During her deposition, Contreras said that she made the assumption that Vehec asked her to clean the work station because "[m]aybe she has Hispanic women

8

that clean her house. I don't know." Def. Stat. of Material Facts, Ex. A at 86. Moreover, LifeSource provides unrefuted evidence to rebut Contreras's assumption—other LifeSource employees have been asked to clean workstations.

Even were the Court to adopt Contreras's view of these events, they are insufficient to permit a reasonable jury to find an objectively hostile work environment. *Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7th Cir.2009) ("Title VII . . . will not find liability based on the sporadic use of abusive language."). For these reasons, LifeSource is entitled to summary judgment on Contreras's hostile work environment claim.

**C.    Discrimination based on national origin**

Though Contreras's response to LifeSource's motion is less than clear, she may also be contending that even if she lacks a viable hostile work environment claim, at least some of LifeSource's actions amounted to actionable national origin discrimination. To establish an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 790 (7th Cir. 2015) (internal quotation marks and citations omitted). Contreras cannot meet this threshold requirement. LifeSource did not fire or demote her, and it did not dock her pay. Contreras presents no evidence from which a reasonable jury could find that LifeSource changed her work in any way that subjected her to a "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment." *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004).

LifeSource did give Contreras negative reviews and put her on a performance

improvement plan, but these are not actionable adverse actions. *See Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014) (negative reviews and placement on a performance improvement plan do not constitute adverse action) (citing, 323 F.3d 524, 532 (7th Cir. 2003); *Cole v. State of Illinois*, 562 F.3d 812, 816 (7th Cir. 2009)). In particular, Contreras did not suffer adverse consequences from being placed on a performance improvement plan. No reasonable jury could find that these measures had any tangible consequences on Contreras's employment at LifeSource.

The Court concludes that no reasonable jury could find that Contreras suffered an adverse employment action. Her disparate treatment claim, assuming she is in fact asserting one, therefore fails.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [dkt. no. 33] and directs the Clerk to enter judgment in favor of defendant and against plaintiff.

                                                          MATTHEW F. KENNELLY
                                                          United States District Judge

Date: October 25, 2016